THE JAMES P. McGUIRL.

(District Court, E. D. New York, at Brooklyn.   April 15, 1915.)

1. COLLISION ⬦⟿96—VESSEL COMING FROM SLIP AND CROSSING VESSEL—MUTUAL RIGHTS AND DUTIES.

A boat coming out of a slip, blowing a slip whistle, must not only give a proper warning by the slip whistle to everything which is not visible to the lookout of the boat, but must also so conduct itself that it can avoid running down any boat which may be in a position to be misled, or not able to protect itself, at the warning of the slip whistle; also, if in coming out it encounters a boat coming from the right, so as to make the starboard hand rule applicable, it must accept the burden imposed by such rule, and avoid injury to the crossing vessel.  On the other hand, the same rule imposes the burden on a vessel coming from the left and near the pier heads of keeping out of the way of any vessel coming out which gives a slip whistle and is properly navigated.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. ⬦⟿96.]

2. COLLISION ⬦⟿96—VESSEL LEAVING SLIP—STARBOARD HAND RULE.

The steam vessel Reickert, coming out of a slip after giving the proper slip whistle, came into collision with the tug McGuirl, which was coming up from the left against an ebb tide and within 75 feet of the ends of the piers.  On seeing the Reichert, or hearing her whistle, the McGuirl gave a two-whistle signal, and kept on until the Reichert gave alarm signals, and reversed when it was too late to avoid collision.  *Held*, that the McGuirl was the burdened vessel, and was in fault for giving the signal she did, and for the collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. ⬦⟿96.]

In Admiralty.   Suit for collision by Jacob C. Reichert against the steam tug James P. McGuirl.   Decree for libelant.

Foley & Martin, of New York City (Wm. J. Martin, of New York City, of counsel), for libelant.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for claimant.

CHATFIELD, District Judge (orally).   [1] I have two or three ideas about this case that perhaps are worth stating.  As a general proposition, a boat coming out of a slip, blowing a slip whistle, must give a proper warning by the slip whistle to everything that is not visible to the lookout of the boat, and also it must so conduct itself that it can avoid running down any boat which may be in a position to be misled, or not able to protect itself, at the warning of the slip whistle.  If a slip whistle is blown, and the boat coming out finds a vessel in the way coming from the right, or the starboard, then all the rules of navigation, including the starboard hand rule, put upon the vessel coming out the burden of using the proper maneuver, or choosing the proper course, to avoid any injury that cannot be prevented by the mere giving of the slip whistle.

In the case under discussion the accident happened just after dark, but it was clear weather and lights could easily be observed.  The Reichert was coming out of the slip, and apparently blew a slip

whistle. Mr. Swain, who was standing on the open end of the dock, expected the Reichert to come over to the dock and get orders. It appears that the captain of the Reichert was not anticipating receiving orders then, but did hear Mr. Swain, and received the order to lie over night in the Hudson river, and thence proceeded out of the slip to go down the river, just as he would have done if Mr. Swain had not hailed him. Mr. Swain's call was after the whistle had been blown, and Mr. Swain's testimony that the whistle was blown when the boat was part way in (at least 100 feet in the slip), is convincing, because he was watching the boat. That would be one of the things which he could not help but observe, if he were waiting to hail the boat just after the whistle was finished; that is, if he had to wait for the whistle in order to give the hail. The captain of the Reichert, by his testimony that the whistle was given when the boat was within 50 feet of the end of the slip, and that then Mr. Swain delivered his message, and that he saw the McGuirl, all at the same time, and was proceeding at such speed that he ran a boat length beyond the end of the pier, after having blown an alarm and reversed, makes out a worse case for the Reichert than almost anything else in the testimony.

I am compelled to feel, or to hold, that his inclination to put the whistle as close as possible to the time of leaving the slip, and his present explanation of the occurrences, seem to me exaggerated, and I think the facts must have been, on all the testimony, that the whistle was blown further back in the slip, and that a very short time elapsed between the blowing of the whistle and the time when the Reichert reached a point where she could observe the McGuirl; but nevertheless that it was more than 50 feet inside of the end of the slip at the time the whistle was blown. Under those circumstances, if the Reichert had found a boat coming down the river that she could not avoid, and she was in a position where the slip whistle did not give time for that boat to get out of the way, there could be no question that the Reichert was bound to proceed under such control that she could have kept out of the way of that boat. That is exactly the case which Mr. Martin litigated in the matter of McAllister v. The Columbia, 205 Fed. 898, 124 C. C. A. 230.

When, on the other hand, the boat is coming from the left, so that the boat has the craft which is emerging from the slip on her starboard hand, and when she is proceeding so close to the pier heads, particularly against the tide, that an accident may occur, because the slip whistle will not give opportunity for the boats to change their position, and unless the boat coming out is not under control, or proceeds in some way to violate the other boat's rights, then all the rules of navigation (including the starboard hand rule) would determine that the boat which is navigating close to the pier heads has the additional duty of respecting the rights of the boat coming out, and cannot rely entirely upon the ability of that boat to control its movements, so as to avoid an accident, if the slip whistle and the other actions of the boat coming out are properly conducted. So I think there is a radical difference between the cases where the starboard hand rule

has no bearing at all, and where the matter is entirely one of special circumstance, and those cases where the starboard hand rule (if it has any bearing) puts the obligation upon the vessel passing along the docks.

[2] In the present case the speed of the vessels does not seem to have had much to do with the accident. The McGuirl was moving up against the tide; but her captain, by giving the jingle bell and seeking to cross the Reichert's bow, did not endeavor to give the Reichert the right of way, and did not assume that the Reichert would seek to avoid the McGuirl by going across the McGuirl's bow. It is apparent, from the fact that the Reichert struck the McGuirl as far aft as the rear of the cabin, that the McGuirl almost cleared the Reichert; therefore, if the McGuirl gave the signal to the Reichert by blowing two whistles, and at the same time went ahead under a jingle bell, and then upon receiving the alarm signal of the Reichert (which was an indication that the Reichert would stop and back, and thus give the McGuirl the greatest possible opportunity to get by, or to get away, if she could do so), if under those circumstances the McGuirl then answered the alarm signal and stopped and backed, that would not be a reason for finding the McGuirl at fault in the ultimate move of stopping and backing; but it would indicate that she did not take the risk of completing a maneuver which she thought would save her, even if it was contrary to rule, and which apparently would have prevented the accident. That leaves her standing strictly upon the question as to whether she did the right thing in the first place; and it seems to me that in every respect she was the burdened vessel. She was coming out from the end of Pier 49. She never reached a point more than 75 feet from the pier end line. She was turning to port at all times after sighting the Reichert, and therefore must have been quite close to Pier 50 when she began to pass that pier, and when the Reichert came in sight. She ran about the same distance—namely, 175 feet—to the point of collision as the Reichert ran; and the movements of the McGuirl against the ebb tide would indicate that she had at least as much speed as the Reichert, which was coming out in slack water, but did not have the jingle bell to overcome when the engines reversed.

I have a strong feeling that when the Reichert started to come out of this slip, and was intending to pass down the river, her first appearance to the McGuirl gave the captain of the McGuirl the impression that the Reichert was intending to turn down the river, and that he therefore assumed that the Reichert would pass inside, and that he could go across her bow, and that he acted accordingly. The positions of the boats and the movements of the Reichert, under the circumstances, and the signals which she gave, were entirely within her rights; and I think the misinterpretation of the captain of the McGuirl as to what the Reichert was intending to do is the real explanation of the collision; that when he started ahead under the jingle bell he was taking a risk which he should not have taken, unless his expectation of the Reichert's movements was correct; and when the Reichert went ahead, and treated the McGuirl as the boat

obligated by the starboard hand rule, by the rule prohibiting navigating close to the pier heads, and by the rule requiring respect for a slip signal, it was too late for the captain of the McGuirl to change his mind, and by beginning to respect the rules remain in the very situation which he thought was dangerous, and which he had tried to run away from.

I think the libelant should have a decree.